[Civ. No. 51036. Second Dist., Div. Two. Jan. 19, 1978.]

MOBIL OIL CORPORATION, Plaintiff and Respondent, v. WILLIAM WAYNE HANDLEY, Defendant and Appellant.

COUNSEL

David Laufer for Defendant and Appellant.

Buchalter, Nemer, Fields & Chrystie, Leonard D. Venger, Gail D. Kass and Nelson S. Anthony for Plaintiff and Respondent.

OPINION

**FLEMING, Acting P. J.**—A former franchise dealer for Mobil Oil Corporation appeals from the judgment in an unlawful detainer action evicting him from service station premises. The basic issues are the admissibility of parol evidence to modify the renewal provisions of appellant's lease; the validity of the lease provisions permitting Mobil to refuse to renew the lease without any showing of "good cause"; the extent to which the franchisee in an unlawful detainer action may raise defenses based on alleged violations of the Franchise Investment Law and other statutes regulating petroleum franchise dealerships:

Appellant first became a Mobil dealer on 3 March 1970, for an initial three-year term. Appellant attended a training school for Mobil dealers for four days before taking possession of the station premises. A few days after taking possession, appellant executed at the station a set of documents, referred to by the trial court as the "lease package." These documents consisted of the lease of the real estate, a retail dealer contract, an equipment inventory, and a security agreement. Although the lease and the contract do not specifically refer to or incorporate one another by reference, they are obviously coordinated documents; for example, their termination and renewal provisions parallel one another

and provide an identical specified term, to be renewed automatically thereafter (a so-called "evergreen" clause), subject, however, to termination by either party at the end of any term by a 90-day written notice of intent to terminate. The first set of documents provided a three-year term. At the end of three years, Mobil did not renew this lease, but executed a new package specifying a one-year term running to 28 February 1974. The parties executed another one-year term in 1974, which package included the lease at bench for a term extending to 28 February 1975. By letter of 19 November 1974, Mobil served timely notice on appellant of its intent to terminate. Appellant refused to surrender the premises, claiming that Mobil could not terminate either the franchise or the lease without good cause. Thereafter Mobil initiated the present unlawful detainer action on 7 March 1975.

Appellant sought to assert three affirmative defenses: (1) lack of good cause for termination of the franchise; (2) illegality of the franchise contract under the Franchise Investment Law (Corp. Code, § 31000 et seq.); (3) estoppel, based on alleged representations by Mobil representatives that appellant's franchise would not be terminated except for breach on his part. Appellant also sought to cross-complain against Mobil for reformation, specific performance, retaliatory eviction, fraud, and bad faith. Although the law and motion department originally struck the affirmative defenses and cross-complaint as improper in a summary unlawful detainer proceeding, the trial court in essence reinstated the affirmative defenses of lack of good cause and of estoppel and undertook to determine the issue whether the lease was an integrated document or an agreement resting partly in parol. As part of this determination the court took evidence on the circumstances of the parties' negotiations and dealings, and the alleged representations by Mobil agents. However, the court did not consider either the legality of the contract under the Franchise Investment Law or the affirmative relief requested in the cross-complaint.

At the hearing appellant testified that various representatives promised him his lease would not be terminated except for gross misconduct ("you practically have to commit murder to be terminated"). He also testified that over the course of his five-year relationship with Mobil he never read any of the documents he signed. Appellant also sought unsuccessfully to offer evidence that the reason for his termination was his purchase of insufficient quantities of Mobil tires, batteries, and accessories. Such a reason might violate California public policy, in that it is illegal to require the franchisee of a petroleum dealer to purchase only

tires, batteries, and accessories sold by the franchisor. (Bus. & Prof. Code, § 21140.2, effective 11 July 1974, prior to the notice of termination here.)

Mobil representatives testified that appellant kept the premises in an unclean condition, with dirty restrooms and junk cars on the premises; that on several occasions during the lease term they warned him to improve his performance; and that his lease was terminated for those reasons. Nonetheless it was agreed that appellant had not breached the lease or any of the franchise documents, that he paid rent and purchased the amounts of fuel required under the contract, and that termination was strictly pursuant to the lease provision allowing nonrenewal on a 90-day notice of termination.

The trial court found that the lease was an integrated and unambiguous document; that it provided for termination by either party on 90-day notice; that it was not an adhesion contract; and that Mobil has dealt fairly with appellant. Judgment for possession of the premises was given Mobil.

I

We first take up the question of extrinsic evidence and integration of the lease. It has been hornbook law since *Masterson* v. *Sine* (1968) 68 Cal.2d 222 [65 Cal.Rptr. 545, 436 P.2d 561], that whether or not a written agreement is "integrated," i.e., expresses the entire agreement of the parties, depends on the parties' intent, which must be resolved by consideration of relevant extrinsic evidence that explains but does not flatly contradict the writing. (See, e.g., *American Nat. Ins. Co.* v. *Continental Parking Corp.* (1974) 42 Cal.App.3d 260, 265-266 [116 Cal.Rptr. 801].) The question of integration must be resolved preliminarily by the court, not a jury, and only after the court finds the agreement not integrated may parol evidence be admitted to amplify its terms. (See, e.g., *Salyer Grain & Milling Co.* v. *Henson* (1970) 13 Cal.App.3d 493, 498-502 [91 Cal.Rptr. 847].) The trial court's ultimate conclusion on the issue of integration is entitled to the same deference on appeal as any other ruling of the court on an issue of fact. (*Salyer, supra.*) An important consideration on the issue of integration is whether a claimed collateral agreement involves terms that would "naturally" have been included in the writing. (See *Masterson, supra*, at p. 225; *Salyer, supra.*)

■ At bench, the renewal provisions of the lease are not only a "natural" inclusion in the lease but almost inevitably would be found in the lease proper, not in a collateral agreement. (E.g., *American Nat. Ins. Co., supra.*) Further, the subject of renewal and termination is dealt with in express and unambiguous language. The same language appears in both the lease and the retail dealer's contract; and no other language in either document varies or casts doubt on those provisions. Appellant's parol evidence—that Mobil agents told him Mobil would not cancel the franchise except for good cause—flatly contradicts the 90-day nonrenewal option spelled out in the documents. Furthermore, plaintiff's parol evidence was controverted by other evidence, and the trial court concluded that such representations had never been made. Under these circumstances the evidence fully supports the finding and conclusion of the trial court that the lease was an integrated document and that parol evidence of contrary representations on its term was not admissible to vary the written agreement. While we do not agree with the trial court that the remaining documents in the "lease package" were irrelevant to an interpretation of the lease in the unlawful detainer proceeding, the court's ruling in that respect was not prejudicial, because nothing in any of the documents varied or contradicted the nonrenewal option language of the lease. Appellant relies heavily on *Brawthen* v. *H & R Block, Inc.* (1975) 52 Cal.App.3d 139, 145 [124 Cal.Rptr. 845], a case in which the trial court admitted proof of the employer's oral representations of "permanent" employment, in variance of a terminable written employment contract. In *Brawthen,* however, there was a great volume of evidence of such extrinsic representations, some of it in writing. While such evidence amply sustained a factual finding of nonintegration in the *Brawthen* case, nothing in that decision suggests that extrinsic evidence to vary written agreements should be admitted in every case.

## II

■ Appellant currently has pending an action in the superior court against Mobil and others for damages for violations of California law, such as the Franchise Investment Law cited above. In the unlawful detainer action, the trial court refused to consider the applicability of such statutes to the lease, taking the view that the franchise relationship was separate from the landlord/tenant relationship and that the issue of right to possession of real property under the lease did not involve the validity of the franchise agreements. To the extent, however, that the validity of the franchise provisions might affect the right to possession of the premises, such validity could become an issue in unlawful detainer

proceedings, in that the jurisdiction of the court is broad enough to encompass any and all issues crucial to the right to possession. (*Green* v. *Superior Court* (1974) 10 Cal.3d 616, 631-634 [111 Cal.Rptr. 704, 517 P.2d 1168].) We think it unrealistic to attempt to separate the documents; because, although we deal with two legally distinct relationships (landlord/tenant and franchisor/franchisee), obviously the landlord/tenant relationship existed only to facilitate the franchise agreement. ■ In causes where the legality of the reason for an eviction may be in issue, the court, in deciding whether to permit affirmative defenses, may balance the interest in preserving the summary nature of the unlawful detainer action against the public policies furthered by protecting the defendant from eviction under the alleged defenses. (*S.P. Growers Assn.* v. *Rodriguez* (1976) 17 Cal.3d 719, 724 [131 Cal.Rptr. 761, 552 P.2d 721].) If the applicable statutes controlling a franchise arrangement prevent its termination, then it would totally frustrate the purpose of those statutes to permit an eviction from the premises in unlawful detainer without any consideration of those statutes; for an action for damages would not restore a defendant to his business and its accumulated good will. But if a defendant has an adequate remedy at law and/or the trial of his alleged defenses would be lengthy and difficult, such balance may be resolved by refusing to hear his affirmative defenses; thus in *Union Oil Co.* v. *Chandler* (1970) 4 Cal.App.3d 716 [84 Cal.Rptr. 756], the court held that the petroleum distributor's antitrust violations under federal law may not be asserted by the dealer as a defense against eviction in the unlawful detainer action.

A review of the applicable statutory law is thus appropriate. ■ The Franchise Investment Law, Corporations Code section 31000 et seq., in force since 1 January 1971, contains disclosure and registration requirements for franchise dealerships, which are enforceable by both civil and criminal sanctions. (Corp. Code, §§ 31300-31306; 31410-31412.) By amendment to Corporations Code section 31005 effective 1 January 1975 that law was specifically made applicable to petroleum dealerships. Because that amendment was subsequent to the execution of the documents at bench, there may be some uncertainty whether the Franchise Investment Law applies to the facts before us. We need not resolve that issue on this appeal, however, because violations of the Franchise Investment Law do not have the effect of continuing the franchise and hence are not relevant to the issue of possession. Appellant may be entitled to damages from Mobil, but he is not entitled to continue in possession of the station premises under any provision of the

Franchise Investment Law. Accordingly, the trial court was correct in refusing to hear evidence on that issue.

■ Next, with respect to petroleum distribution, Business and Professions Code section 20999.1 provides: "Notwithstanding the terms of any franchise, no franchisor shall terminate, cancel or refuse to renew any existing franchise without good cause." That statute became effective on 1 January 1976, a date subsequent to the stated expiration date of the franchise agreement here and to initiation of the unlawful detainer action at bench. By its terms the statute purports to apply only to *existing* franchises. But appellant argues that although the statute was passed subsequent to the stated termination of his lease, nevertheless the statute, although not directly controlling the relationship, reflects legislative concern over long-standing abuses in the petroleum industry, and to that extent puts in legislative form a previously existing public policy against cancellation of the franchise without good cause. To support his argument appellant cites a New Jersey case, *Shell* v. *Marinello* (1973) 63 N.J. 402 [307 A.2d 598], certiorari denied, 415 U.S. 920 [39 L.Ed.2d 475, 94 S.Ct. 1421].

Light on the issue may be found in the enactment of Statutes 1977, chapter 372, effective 1 January 1978, which amends Code of Civil Procedure, section 1174. That amendment precludes the restoration of possession to a petroleum distributor in an unlawful detainer action against a petroleum dealer, unless the court has determined there was good cause to terminate the franchise. The legislative digest of the provision states, "Existing law does not restrict a petroleum distributor from obtaining a judgment against a tenant who is a gasoline distributor for unlawful detainer . . ." The enactment of this amendment, and the digest thereto, suggest current legislative belief that the prior law, applicable to the cause at bench, did not prevent eviction of a petroleum dealer without good cause in an unlawful detainer action. The rationale of *Shell* v. *Marinello, supra,* that public policy against cancellation of a petroleum dealership preceded the statute, is in some respects persuasive, but against its appeal must be balanced the formidable impairment of contract that would result if all previously negotiated petroleum dealerships—initially structured as terminable for any reason—suddenly become franchises of unlimited duration. Such an interpretation would further the public policy expressed in the foregoing statutes, but there is no avoiding the conclusion that it would also retroactively and materially impair many contracts between petroleum distributors and their dealers. (Cf. *United States Trust Co.* v. *New Jersey* (1977) 431 U.S. 1 [52 L.Ed.2d

92, 97 S.Ct. 1505].) Absent an express legislative declaration of retroactivity, we do not feel justified in embarking on such a course. Accordingly we reject the "good cause" statute (Bus. & Prof. Code, § 20999.1) as a defense to the instant unlawful detainer action, because appellant's lease expired prior to the statute's effective date and therefore his franchise was not *existing* when the statute became effective.

## III

We turn to the cross-complaint. The issues raised by the striking of the cross-complaint are similar to those presented by the affirmative defenses, namely, whether the right to possession could be affected by the allegations of the cross-complaint. ▮ Of these claims only the fourth cause of action requires plenary discussion.[1] That claim raises the issue of retaliatory eviction. Appellant alleges that the nonrenewal of his lease constituted retaliation for appellant's exercise of his rights under California and federal law: specifically, his right to sell tires, batteries, and accessories purchased from other sources (Bus. & Prof. Code, § 21140.2); the right to maintain normal business practices as established during the base period (FEA Reg. 210.62); the right to criticize Mobil under the First Amendment, federal Constitution and the Fourteenth Amendment, United States Constitution; and the right to be free from retaliatory action relevant to acts prohibited by federal law, FEA Regulation 210.61. In addition to raising these matters by cross-complaint, appellant attempted to offer evidence on the Business and Professions Code section 21140.2 issue at trial and again raised the matter of retaliatory eviction for nonpurchase of accessories on his motion for a new trial.

---

[1] The first cause of action of the cross-complaint alleges mistake, fraud, and violation of Federal Energy Petroleum Allocation Act of 1973 in not providing a three-year lease. Such cause calls into question the validity of the lease and cannot result in extending possession thereunder, though it may produce damages for the cross-complainant. Accordingly that cause was properly stricken. (Cf. *Nork* v. *Pacific Coast Medical Enterprises, Inc.* (1977) 73 Cal.App.3d 410 [140 Cal.Rptr. 734].) The second cause seeks specific performance of an optional rent amendment rider to the lease, which provided that either party may notify the other once during any current term of the lease of a desire to amend the rental terms, on 30 days written notice. That rider is not relevant to the question of the length of the franchise term. The third cause of action alleges fraudulent misrepresentations, namely renewal promises, and requests damages; the damages are not cognizable in the unlawful detainer proceeding, and fraud in the inception of the lease renders it void but does not entitle cross-complainant to possession under it. (Cf. *Nork, supra.*) The fifth cause of action alleges tortious interference with business interests, breach of covenants of good faith and fair dealing, and seeks damages; that cause is likewise irrelevant to possession and was properly stricken.

Retaliatory eviction for the exercise of some statutory or constitutional rights is not allowed in California, and allegations of such eviction may be presented as defenses to unlawful detainer. (*Schweiger* v. *Superior Court* (1970) 3 Cal.3d 507 [90 Cal.Rptr. 729, 476 P.2d 97] (Civ. Code, § 1941); *Abstract Investment Co.* v. *Hutchinson* (1962) 204 Cal.App.2d 242 [22 Cal.Rptr. 309] (racially motivated eviction).) On the other hand other statutory rights must be separately litigated when the violations are not closely related to possession and are more expeditiously litigated in a separate forum. (*Union Oil Co.* v. *Chandler, supra,* 4 Cal.App.3d 716 (violations of federal antitrust law).) Also, the opinion in *S.P. Growers Assn.* v. *Rodriguez, supra,* 17 Cal.3d 719, indicates a possibility that in a commercial eviction, as contrasted with a residential eviction, the retaliatory defense may be unavailable. The court said: "Moreover, it must be remembered that *Union Oil* involved a commercial lease, while the present case concerns eviction from a residential dwelling. Like the lessee in *Union Oil,* defendants may file a separate suit to vindicate their business rights, but the existence of such an alternative provides small comfort to a residential tenant." (17 Cal.3d at p. 730.)

However, we do not find the commercial/residential distinction determinative here. The real issue involves the possibility of frustration of statutory purpose. It is clear that the statutory purpose of Business and Professions Code section 21140.2 is to prevent petroleum distributors from coercing franchisees into buying the distributor's accessories. If the distributor could evict the franchisee for failure to purchase his tires, batteries, and accessories, and thus put him completely out of business with nothing left but the possibility of recovery of money damages in a separate lawsuit, the purpose of the statute would be frustrated, for the obvious aim of the statute is to keep the franchisee in business, an aim underscored by the subsequently enacted sections of the Business and Professions Code (§ 20999 et seq.) which preclude future termination of a petroleum franchise without good cause.

At bench, however, the record indicates that appellant's evidence of coercion to purchase tires, batteries, and accessories involved pressure exerted and applied not by Mobil but by Paul Ganey, head of an independent distributing organization named T.B.A. Marketing Services. Although it might be inferred that Mobil would benefit indirectly from any coercion to purchase Mobil products applied by an independent distributor, nevertheless we think that an appellant's grievance which is initially directed against an independent third party is not properly

cognizable in an unlawful detainer proceeding. The evidence of coercion is too far afield from the subject matter of the eviction, in that it is not restricted to the business relationship of the parties at bench but necessarily involves the conduct and relationship of a third party. Accordingly, we think the court was correct in striking a defense of retaliatory eviction based on evidence of coercion by an independent third party. Appellant has his remedy in an independent action against T.B.A. Marketing Services and Mobil for damages under Business and Professions Code section 21140.2 et seq., an action which, we are informed, is presently pending.

 We also adopt the view that under the rationale of the *Union Oil* case, possible violations of federal energy regulations and of free speech are, like antitrust violations, best litigated in a separate lawsuit. Accordingly it was not error to strike those portions of the cross-complaint.

## IV

 Appellant challenges a number of the court's procedural rulings: denial of leave to amend the affirmative defenses to allege waiver by Mobil in accepting rent; error in limiting the testimony of expert witness Shelton about general practices in the petroleum industry; and error in striking the cross-complaint. These contentions have little merit. Because the waiver defense was raised about a week before trial (the trial commenced 6 July 1976) although the facts were available to appellant when he filed his answer in May 1975, the court did not abuse its discretion in holding that the motion came too late and would unduly delay the trial without justification. (*Permalab-Metalab Equipment Corp. v. Maryland Cas. Co.* (1972) 25 Cal.App.3d 465, 471-472 [102 Cal.Rptr. 26].) Shelton's testimony on statements about career opportunity to service station dealers on recruitment was (1) hearsay, (2) irrelevant to representations specifically made to appellant, and (3) useless in furthering appellant's case on the issue of integration of the lease.

The findings, conclusions, and judgment of the trial court are affirmed.

Compton, J., and Beach, J., concurred.

A petition for a rehearing was denied February 14, 1978, and appellant's petition for a hearing by the Supreme Court was denied March 16, 1978.