[Civ. No. 55617. Second Dist., Div. Five. Dec. 6, 1979.]

JAMES M. WITT, Plaintiff and Appellant, v.
UNION OIL COMPANY OF CALIFORNIA et al.,
Defendants and Respondents.

**COUNSEL**

Schimmenti, Berberian & DeNatale and Thomas V. DeNatale, Jr., for Plaintiff and Appellant.

Buchanan & Besser and Robert S. Besser for Defendant and Respondent.

**OPINION**

**HASTINGS, J.**—This is an appeal from a judgment of dismissal after plaintiff and appellant James M. Witt refused to amend his first amended complaint when defendant and respondent Union Oil Company's general demurrer was sustained with leave to amend. Plaintiff did file a document entitled "Second Amendment Complaint" but it was identical except for the title.

Union Oil leased to plaintiff a gasoline service station under a lease dated November 9, 1973. The lease ended automatically and without notice on November 8, 1976. The lease granted to plaintiff the right to engage in the business of offering, selling and distributing Union Oil branded petroleum products, tires, batteries and accessories. Plaintiff alleged in the amended complaint that he paid to Union Oil a franchise fee for the right to sell Union Oil branded products. The fee was paid in rental payments for the premises, and purchases of Union Oil's products at a price in excess of the bona fide wholesale price and the purchase of fixtures, advertising and promotional material and other equipment necessary to engage in the business.

Pursuant to the terms of the lease, Union Oil terminated the lease on November 8, 1976.

Plaintiff's amended complaint alleged four causes of action against Union Oil. Each cause of action is based on a different theory of recovery, therefore, we analyze and respond to each cause of action individually. Additional facts will be added as necessary.

## I

■ The first issue argued by the parties on appeal deals with plaintiff's second cause of action that alleges that Union Oil wrongfully terminated the lease in violation of Business and Professions Code section 20999.1.[1] This section became effective on January 1, 1976, more than two years after the date of the lease (Nov. 9, 1973). It is plaintiff's argument that the first sentence of the section stating ". . . no franchisor shall terminate, cancel or refuse to renew *any existing* franchise without good cause" applies to his lease because it was in effect on January 1, 1976, even though it would have a retroactive effect on agreements or leases entered into prior to the adoption of the section. Plaintiff's argument is irrelevant to the issue. His interpretation of section 20999.1 would engraft on the lease a continuing term that could never be terminated except for one or more of the "good cause" conditions enumerated in the section. A lease with a definite term and no right to renewal could become a lease in perpetuity. Such a drastic amendment to existing leases and franchise contracts was not intended by the Legislature. The section was designed to prevent franchisors from terminating or refusing to renew franchises where the agreement gives a right to do so arbitrarily or permits cancellation for a cause that is inconsistent with the grounds set forth in the section. If, as in our present case, the lease or agreement has terminated by its own terms, the section does not come into play. In other words to have a termination or cancellation a franchisee must have some period of time remaining on his lease that he is deprived of by the lessor's violation of the section. Likewise, there can be no wrongful refusal to renew a franchise unless the franchisee has some right of renewal. Defendant did not terminate or cancel the lease before its expiration nor did it take from plaintiff any renewal rights.

---

[1] Business and Professions Code section 20999.1 then provided: "Notwithstanding the terms of any franchise, no franchisor shall terminate, cancel or refuse to renew any existing franchise *without good cause.* [¶] As used in this section good cause is limited to.

Even if plaintiff had some right of renewal, section 20999.1 cannot be applied retroactively. In *Union Oil Co. v. Moesch,* 88 Cal.App.3d 72 [151 Cal.Rptr. 517], the lease was signed before January 1, 1976, and expired after said date. In commenting on the retroactivity of the section, the court said: "It is a fundamental principle of constitutional law that a statute may not, in general, be applied retroactively so as to impair an existing contractual obligation or deprive a person of a vested property right. (See *Estate of Gill* (1971) 19 Cal.App.3d 496, 501 [96 Cal.Rptr. 786.) Both the United States and California Constitutions specifically incorporate clauses prohibiting impairment of contracts (U.S. Const., art. I, § 10; Cal. Const., art. I, § 9; see 5 Witkin, Summary of Cal. Law (8th ed. 1974) Constitutional Law, § 619, p. 3918) and the cases are legion which recognize this precept (see *Bradley v. Superior Court* (1957) 48 Cal.2d 509, 519 [310 P.2d 634], and cases cited therein). [¶] *Were Moesch attempting to apply section 20999.1 to the original lease which was executed some two and one-half years prior to the effective date of the statute, we would be compelled, in accord with the decision in Mobil Oil Corp. v. Handley, supra, 76 Cal.App.3d 956 [143 Cal.Rptr. 321], to hold any such attempted application unconstitutional."*[2] (Italics added.) (88 Cal.App.3d at p. 77.)

## II

◼ Plaintiff's next argument concerns his first cause of action in which he claims damages for retaliatory eviction motivated by Union Oil's desire to punish plaintiff for exercising his right to purchase tires, batteries and accessories from any available source. This cause of action, which is another way of pleading a wrongful eviction, is based on *Mobil Oil Corp. v. Handley,* 76 Cal.App.3d 956 [143 Cal.Rptr. 321] and Business and Professions Code section 21140.2 that provides that a

---

the following: [¶] (a) The gasoline dealer or petroleum distributor failed to comply with essential and reasonable requirements of the franchise agreement; [¶] (b) The gasoline dealer or petroleum distributor failed to act in good faith in carrying out the terms of the franchise; or [¶] (c) For other legitimate business reasons (except that a termination, or cancellation of a franchise for the purpose of enabling the petroleum distributor or manufacturer to assume operation of the distributor's or gasoline dealer's business shall not be considered to be a legitimate business reason unless the gasoline dealer or distributor is paid reasonable compensation for the value of his franchise, including a reasonable amount for goodwill)." (Italics added.) (Section amended in 1978.)

[2]In *Moesch* the lease had not automatically terminated at the end of its period because Union Oil Company entered into further negotiations with Moesch and the lease was placed on a month-to-month basis. For this reason *Moesch* held that section 20999.1 governed because the new lease on a month-to-month basis was negotiated after the section became effective.

franchised retail gasoline dealer may sell tires, batteries and other automotive accessories that are available to him for retail sale.[3] Although this section was enacted on July 11, 1974, a date subsequent to the date of the lease in question, plaintiff argues that the retroactivity issue previously raised as to section 20999.1 is inapplicable here because the very wording of the statute makes it clear that it was to apply as of its effective date. Similar language was absent from section 20999.1. In *Mobil Oil Corp.* v. *Handley, supra,* the court recognized that section 21140.2 can be the basis for an independent action for retaliatory eviction. The court, at page 966, states: "It is clear that the statutory purpose of Business and Professions Code section 21140.2 is to prevent petroleum distributors from coercing franchisees into buying the distributor's accessories. If the distributor could evict the franchisee for failure to purchase his tires,...thus put him completely out of business with nothing left but the possibility of recovery of money damages in a separate lawsuit, the purpose of the statute would be frustrated, for the obvious aim of the statute is to keep the franchisee in business...."

*Handley* is inapposite to the case at bar. In *Handley* there was an actual eviction because at termination of the regular lease, a provision provided that it would be renewed automatically unless 90-day notice was given by either party. In our present case, as stated earlier, there was no eviction. The parties agreed to a term of three years and it automatically terminated at that time. Plaintiff had no continued expectancy in the lease that he could be deprived of by some wrongful act of Union Oil. From the face of the complaint, it appears that plaintiff received exactly what he was entitled to receive under the agreement and during the three-year term there was no interference with plaintiff's right to quiet enjoyment of the leasehold estate. It is his contention that there was retaliatory eviction because Union Oil refused to renew the agreement, however, there is nothing in the lease requiring Union Oil to renew or any provisions that would justify plaintiff in believing that the lease would be renewed so that he could allege these provisions were breached by some form of retaliatory action on the part of Union Oil. Furthermore, if Union Oil could be found liable on this ground, it would be applying the section retroactively which would be unconstitutional. (*Union Oil Co.* v. *Moesch, supra,* 88 Cal.App.3d 72.)

---

[3]Business and Professions Code section 21140.2 provides: "From the effective date of this section it shall be illegal for any franchisor by any action to require a franchisee to purchase only those tires, batteries, and other automotive accessories sold by the franchisor. A franchised retail gasoline dealer may sell any tires, batteries, and other automotive accessories as may be available to him for retail sale."

## III

Plaintiff's third cause of action alleged damages for breach of covenant of good faith and states that his argument would be the same as contained in the second cause of action pertaining to section 20999.1. Our conclusion supporting the judgment on this issue is sufficient response to plaintiff's argument. We also agree, however, with Union Oil's further comment that plaintiff is attempting to create an implied covenant which would override an express covenant of the lease which was that the parties agreed to terminate the lease at the end of three years. ■ "A covenant will not be implied against express terms or to supply a term on a matter as to which the contract is intentionally silent." (1 Witkin, Summary of Cal. Law (8th ed. 1973) Contracts, § 580, p. 497.)

## IV

■ Plaintiff's fourth cause of action alleges that termination of the lease by Union Oil violated the Cartwright Act as set forth in Business and Professions Code section 16700 et seq. In support of this allegation the plaintiff claims that termination was motivated by plaintiff's purchase of tires, batteries and accessories from a source other than Union Oil and this conduct by Union Oil was intended to lessen competition which is forbiddened by the Cartwright Act. It is true that a franchisee may sue the franchisor for damages caused by the franchisor's violation of the Cartwright Act. This was the substance of the cause of action in *R. E. Spriggs Co.* v. *Adolph Coors Co.* 94 Cal.App.3d 419 [156 Cal.Rptr. 738] recently filed by this court. In *Spriggs,* however, the damages sought were for the period prior to termination of the franchise when the actual activities of Coors violated the Cartwright Act. In our present case, damages are not sought for violation of the Cartwright Act during the three years or portions thereof that the lease-franchise agreement was in effect. Instead, plaintiff alleges that Union Oil violated the Cartwright Act when it *terminated* the lease and for reasons stated earlier this is an erroneous contention because the lease by its provisions terminated itself.

The judgment dismissing plaintiff's complaint is affirmed.

Kaus, P. J., and Stephens, J. concurred.