**Danny E. DAVIS, Plaintiff,**

v.

**GULF OIL CORPORATION, a Pennsylvania corporation, Defendant.**

**No. CV 82–2972–ER(Bx).**

United States District Court, C.D. California.

Aug. 31, 1983.

Shapiro, Laufer, Posell & Close, Los Angeles, Cal., for plaintiff.

McCutchen, Black, Verleger & Shea, Los Angeles, Cal., for defendant.

## MEMORANDUM DECISION AND ORDER

RAFEEDIE, District Judge.

This action was originally filed by plaintiff in the Superior Court for the County of Los Angeles, and was removed to this Court by defendant on the grounds of diversity of citizenship.[1] The case is presently before the Court on defendant's motion for summary judgment pursuant to Rule 56, Federal Rules of Civil Procedure.[2] Having considered the pleadings and supporting evidentiary material, and counsels' presentation at the hearing on this matter, the Court finds there to be no material facts in dispute and concludes that defendant is entitled to judgment as a matter of law. For the reasons set forth below, the Court hereby grants defendant's motion on all counts.

### I

Plaintiff is a former Gulf Oil Corporation ("Gulf") lessee dealer who operated a Gulf service station in Canoga Park, California. The first lease agreement entered into by plaintiff and defendant was executed on March 1, 1974 (the "1974 Lease"). This

---

1. 28 U.S.C. § 1441 *et seq.*

2. Rule 56 provides in pertinent part:

    (a) For Claimant. A party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may, at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party, move with or without supporting affidavits for a summary judgment in his favor upon all or any part thereof.

    (b) For Defending Party. A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary

judgment in his favor as to all or any part thereof.

    (c) Motion and Proceedings Thereon. The motion shall be served at least 10 days before the time fixed for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

lease was to be effective for one year, and was subject to automatic renewal for successive one year periods unless either party elected to terminate the agreement pursuant to the terms thereof.[3] The first year was designated as a "probationary period" during which defendant had the right to terminate in any event on 30 days' notice.

At the time for renewal of the 1974 Lease, the parties executed a new lease agreement (the "1975 Lease") that modified certain terms of the 1974 Lease. Pursuant to the 1975 Lease's stated terms, the monthly rental was increased from $52.00 per month to $330.00 per month, the gasoline fee was raised from 1.5 cents per gallon to 2.0 cents per gallon, a minimum monthly fee of $1,130.00 was imposed (should the flat rental rate plus gasoline charges not reach this amount), and plaintiff's hours of operation were slightly modified. Defendant concurrently elected to waive the rental

and gasoline fee increase provisions of the 1975 Lease. Consequently, other than modifying the hours of operation (which had been requested by plaintiff and agreed to by defendant), the 1975 Lease contained the same provisions as the 1974 Lease, including a standard "integration clause."[4] The parties operated under the terms of the 1975 Lease for a period of three years.

In early 1978 the Southern California Division of Gulf elected to change its marketing practices due to the lack of commercial success in this market. Instead of operating branded "Gulf" stations, the company decided to convert to unbranded stations and in doing so significantly altered the terms of the lease agreements with the various licensees.[5] This new proposal was presented to plaintiff (and other Southern California Gulf dealers) in January, 1978, approximately 4–6 weeks prior to plaintiff's renewal date. After some negotiations,

**3.** Paragraph 2 of the 1974 Lease contains the renewal and cancellation terms:

2. TERM: Subject to the provisions herein for termination, the term of this lease shall be for a period commencing on the 1st day of March 1974 and ending on the 28th day of March 1975 and thereafter for periods of one (1) year respectively, unless and until either party herein serves written notice upon the other party at least thirty (30) days prior to any anniversary date of the commencement of the term of this lease of its decision not to renew this lease; whereupon this lease shall terminate upon such anniversary date. Lessee may terminate this lease at any time during the term hereof by giving Lessor ninety (90) days prior written notice of such termination. Lessor may terminate this lease at any time during the first twelve (12) months of the term hereof, which period shall be regarded as a preliminary period by giving Lessee thirty (30) days' prior written notice of such termination; provided, however, that said 12-month period during which time Lessor may exercise such right to terminate shall be reduced by the length of time that the Lessee has operated as a dealer in the branded gasoline of Lessor or any subsidiary of Lessor as said premises prior to the commencement date of this lease. In no event, however, shall the term of this lease continue beyond one day prior to the termination, no matter how caused or for whatever reason including the default of the Lessor, of the master service station lease, if any, of the service station held by the Lessor or any extension of such lease. Lessee agrees as a

covenant of this lease that the breach of any of the terms or conditions of any supply contract between the parties covering the delivery of products by Lessor to Lessee shall constitute a breach of this lease, and the termination of said supply agreement for any reason shall at the option of the Lessor, terminate this lease.

**4.** Paragraph 20 of both the 1974 Lease and the 1975 Lease provides as follows:

20. CANCELLATION OF PREVIOUS AGREEMENTS: This lease cancels and supersedes any lease, sublease or other agreement of prior date between Lessee and Lessor, including any subsidiary or affiliate of Lessor, with reference to the possession of the demised premises and contains all of the covenants, stipulations, agreements, and conditions agreed upon by the parties hereto and no employers, agent, or representative of Lessor has authority to change, modify or alter the terms hereof, except by written instrument executed upon and with the same authority as this lease and neither party is nor shall be bound by any inducement, statement, representation, promise, or agreement not in conformity herewith.

**5.** The new proposal called for a significant increase in the flat monthly rental fee; a lower purchase price for gasoline; a change in the lessor's and lessee's respective responsibilities regarding service station maintenance; and of course, the removal of all Gulf logo on the premises.

plaintiff ultimately rejected the new offer. Neither party served formal written notice of an election to not renew, although defendant did emphasize during the parties' negotiations that in light of the changed marketing policies, the lease would not be renewed on the terms contained in the 1975 Lease. Plaintiff vacated the Gulf station premises, and in March 1978 entered into a three-year lease agreement with Mobil Oil Co. to operate a Mobil service station. Defendant ultimately took possession of the Gulf station and converted it into an independent "Go-Lo" operation.

Plaintiff filed this action on February 13, 1979, seeking damages under three theories. First, plaintiff contends that defendant violated the California Franchise Investment Law (hereafter, "CFIL"), California Corporations Code § 31000 *et seq.*, by failing to register its offer of the franchise in 1975 and/or to make disclosures required by the CFIL. Second, plaintiff contends that defendant violated California Business and Professions Code § 20999.1 which requires "good cause" before a gasoline dealer's franchise may be terminated or non-renewed. Finally, plaintiff seeks damages for defendants alleged "unfair business practices" in violation of California Business and Professions Code § 17200 *et seq.* Defendant seeks summary judgment on each of these three theories of recovery.

II

A. *The California Franchise Investment Law*

The CFIL became law on January 1, 1971. The intent of the legislature in adopting this legislation is expressly set forth in California Corporation Code § 31001: "It is the intent of this law to provide each prospective franchisee with the information necessary to make an intelligent decision regarding franchises being offered." The disclosure requirements of the law were designed to solve various problems that had arisen in connection with franchising business operations, problems that were often related to misunderstandings between the contracting parties at the outset of the franchise relationship.[6] The terms of the CFIL were made applicable to any contractual agreement between a petroleum corporation and a gasoline dealer as of January 1, 1975.

The 1974 Lease expressly stated that it would last for one year subject to automatic renewal unless (1) terminated within 30 days prior to the "anniversary date," or (2) otherwise terminated as provided in the agreement. It is clear that the 1974 Lease was entered into *before* the CFIL was applicable to contracts between petroleum corporations and gasoline dealers, and that lease came up for renewal *after* the date on which the CFIL was applicable to such contracts. Plaintiff contends that because the lease presented to him and signed at the time of the renewal was a "new lease," defendant was therefore offering a "new franchise." Based on this characterization, plaintiff alleges that the 1975 Lease was governed by the terms of the CFIL, and that defendant had a legal obligation to register the offer and make the required disclosures. Defendant contends that the 1975 Lease that was proposed was merely a renewal of the existing franchise relationship, and therefore the registration and disclosure requirements of the CFIL were inapplicable. The facts regarding this controversy are not in dispute, and the Court is in a position at this time to determine the legal significance of the 1975 Lease.

Both the express terms of the CFIL and the legislative scheme designed by the framers of the statute indicate that the CFIL was not intended to apply to renewals of existing franchises. The statute is concerned with "prospective" franchisees who require certain disclosures in order to make an educated decision regarding the franchise offer. The CFIL applies to offers and sales of franchises, and pursuant to what was § 31018(b), "[t]he terms ["offer" and "sale"] do not include the renewal or extension of an existing franchise where there is no interruption in the operation of the fran-

6. See generally, Damon, "Franchise Investment Law", 2 Pacific Law Journal 27 (1971).

chised business by the franchisee."[7] By including this provision in the statute, the legislature clearly intended that franchises established prior to the effective date of the statute were not bound by the registration and disclosure requirements provided that the franchise continued in existence pursuant to a bona fide renewal and did so without interruption.[8]

Upon close examination of the circumstances surrounding the proposed continuation of the franchise relationship in 1975, the Court concludes that the franchise was merely renewed in March, 1975, and thus the registration and disclosure requirements of the CFIL were inapplicable to this transaction. Plaintiff simply was not a "prospective" franchisee that was in need of the information made available by the disclosure statement. Plaintiff was already experienced in the franchised business, and the 1975 Lease proposal was merely an offer to renew the existing franchise. Plaintiff rigidly seizes upon the fact that a new and different lease was signed by the parties in 1975 to support the proposition that a "new franchise" was created. However, the fact that a different lease agreement was adopted is not dispositive of, or even highly relevant to, the question of whether the 1975 Lease was a renewal or extension of the franchise relationship that had begun in March, 1974. The record before the Court leaves no doubt that the franchise relationship continued without interruption from March 1974 through March 1978. Furthermore, plaintiff's own testimony lends support to the conclusion that the parties intended the 1975 Lease to renew (with minor modifications) the 1974 franchise.[9]

Plaintiff contends that the exemption contained in § 31018(b) applies only in situations where there has already been the disclosure required by the CFIL. However, this proposition is at odds with the plain and unambiguous reading of the statute, as well as the expressed intent of the legislature. The legislature was not concerned with continuing disclosure in cases where the franchise was already in existence. Instead, the intent of the CFIL was to require initial disclosure at the outset of the franchise relationship. To adopt plaintiff's position would be to conclude that all franchisors were required, after the enactment of the CFIL, to make the disclosures mandated by the statute (even though there was no change in the franchise relationship) and only *then* were they exempt from making additional disclosures at the time of renewals. This certainly was a possible statutory scheme. However, there is *nothing* in the CFIL to suggest it is one that was adopted by the California legislature, and in fact the statutory language expresses a contrary intent. Where statutory terms are unambiguous, no reason exists for "construction" or "interpretation" of those terms in a manner that is inconsistent

---

**7.** At the time the 1975 Lease was executed, § 31018(b) provided as indicated in the text. This became § 31018(c) in 1977 and at the same time was amended by adding the following proviso immediately after the word "franchise" at the end of the section.

   "... provided that a material modification of an existing franchise, whether upon renewal or otherwise, is a "sale" within the meaning of this section."

**8.** Statements made by the legislators and others in connection with hearings on the CFIL reinforce the conclusion that existing franchisees who were experienced in the business operations of the franchise were not the concern of the new statute. See comments by Anthony Pierno, Commissioner of Corporations, before the Senate Insurance and Financial Institutions Committee on May 21, 1970

(intent of legislation is "to assure the person interested in purchasing a franchise that he has received a full and forthright disclosure ...."); Senator Bradley's statements before the Subcommittee on Urban and Rural Economic Development of the United States Senate Small Business Committee on March 30, 1970 (CFIL only affects franchise relationship at the outset and not the continuing relationship).

**9.** During plaintiff's deposition, when plaintiff was asked whether he was presented with the 1975 Lease in connection with renewing his lease, he answered "Yes." When questioned whether his discussion about the 1975 Lease with Gulf officials was conducted upon recognition that plaintiff had passed his probationary period and was now "being renewed", plaintiff responded affirmatively.

with their clear meaning. *People v. Chad,* 28 Cal.3d 739, 746, 170 Cal.Rptr. 798, 621 P.2d 837 (1981), *cert. denied, California v. Chad,* 452 U.S. 931, 101 S.Ct. 3066, 69 L.Ed.2d 431 (1981).

### B. *California Business and Professions Code § 20999.1*

Plaintiff contends that defendant terminated his franchise in violation of California Business and Professions Code § 20999.1. That section provides: "Notwithstanding the terms of any franchise, no franchisor shall terminate, cancel or refuse to renew any existing franchise without good cause." This provision became effective on January 1, 1976. Plaintiff's lease with defendant was last renewed on March 1, 1975. Plaintiff contends that this statute should be retroactively applied to the franchise arrangement between plaintiff and defendant, and if so applied, that the termination of the franchise relationship was in violation of this provision. Defendant contends that the statute cannot constitutionally be applied retroactively, but even if it is, claims that its conduct does not violate the statutory provisions.

■ The Court declines to address the issue of retroactivity, and assumes for the purposes of this motion that the statute can be applied in such a fashion.[10] Under the facts presented by the defendant and not contradicted by the plaintiff, the Court finds that there was no "termination" by the defendant in this instance, thereby making any application of § 20999.1 irrelevant. Furthermore, assuming a termination or "failure to renew" occurred, the Court concludes that good cause has been established for such action.

The 1975 Lease was again up for renewal in March, 1978. Very early in that year, defendant presented plaintiff with the proposal to become an unbranded gasoline dealer, which would involve various changes in the terms of the parties' agreement. There is no evidence that the proposal was made with any ulterior motivation or in a coercive fashion. It was presented as a result of market conditions that dictated a change in business strategy. Plaintiff carefully considered this proposal, comparing it to other possibilities in the area, and eventually concluded that it was not in his best interests. Accordingly, in February, 1978, plaintiff elected to begin searching for another station to operate. He contacted Mobil and Union Oil, and ultimately elected to take over and run a Mobil station. Early in February, plaintiff entered the Mobil training course, and in the first part of March, 1978, plaintiff opened a Mobil service station and signed a three-year lease with that company.

The act of termination or failing to renew requires some affirmative conduct on the part of the defendant which has the

---

**10.** In circumstances where a state statute is potentially infirm on federal constitutional grounds, absent a controlling interpretation by the state's highest court, it is often wise for federal courts to avoid deciding the constitutional issue in the interests of federal-state relations. *See Fornaris v. Ridge Tool Co.,* 400 U.S. 41, 91 S.Ct. 156, 27 L.Ed.2d 174 (1970) (lower court should "hold its hand" on interpreting the "just cause" provision of the franchise law until the Puerto Rican Supreme Court addresses the issue).

The issue of applying § 20999.1 retroactively is unsettled at this time, as the California courts have adopted conflicting positions. *Compare, Witt v. Union Oil Co.,* 99 Cal.App.3d 435, 160 Cal.Rptr. 285 (1979) (retroactive application would result in an unconstitutional impairment of contract) and *Mobil Oil Corp. v. Rossi,* 138 Cal.App.3d 256, 187 Cal.Rptr. 845 (1982) (retroactive application not unconstitu-

tional in light of balancing test applied to the facts of that case). There is no controlling authority from the California Supreme Court, but this court notes that the weight of authority from other jurisdictions indicates a general unwillingness to impose the good cause requirement on existing franchise relationships. *See, e.g., Martino v. McDonald's Corp.,* 101 Wis.2d 612, 304 N.W.2d 780 (1981); *Mason v. Farmers Insurance Co.,* 281 N.W.2d 344 (Minn. 1979); *Southwest Distributing Co. v. Olympia Brewing Co.,* 90 N.M. 502, 565 P.2d 1019 (1977); *Coulter Pontiac, Inc. v. Pontiac Motor Div., General Motors Corp.,* 4 Ohio App.3d 169, 446 N.E.2d 1128 (1981); *Ward v. Chevron U.S.A., Inc.,* 123 Ariz. 208, 598 P.2d 1027 (Ct. App.1979). Nevertheless, without reaching the issue, this Court will give plaintiff the benefit of any doubt, and consider his claims under § 20999.1.

effect of ending the franchise relationship. Recently, the California Court of Appeal held in this context that "to have a termination or cancellation a franchisee must have some period of time remaining on his lease that he is deprived of" by the lessors wrongful conduct. *Witt v. Union Oil Co. of California,* 99 Cal.App.3d 435, 438, 160 Cal. Rptr. 285 (1979). However, the undisputed facts indicate that plaintiff voluntarily abandoned the franchise at the close of its term after the proposal to adopt an unbranded station was presented to him and rejected. There simply was no "termination" in this context, as plaintiff chose to leave his franchise for a more lucrative business opportunity.

Plaintiff contends that defendant did not properly notify him of the "termination," thereby violating the terms of the 1975 Lease agreement. However, the undisputed facts indicate that plaintiff himself concluded the franchise relationship by entering the Mobil training program before the lease with defendant expired and subsequently opening a Mobil service station. Plaintiff disingenuously alleges that defendant "confiscated" the franchise, when the facts demonstrate that plaintiff elected to seek another business when the terms of the franchise arrangement were changed in a manner that he determined was unacceptable. Plaintiff's contention that he merely abandoned the physical premises but did not abandon the franchise contract is untenable. If plaintiff's position on this issue. were adopted, defendant would be required to leave the premises vacant because the franchise contract has not been "properly" terminated, while plaintiff operated another station at a different location.

■ Taking this analysis one step further and assuming there was a termination or a

failure to renew in this instance, the Court concludes that the termination was for "good cause" as that term is defined in the statute. Several cases have addressed the constitutionality of imposing a "good cause" requirement on existing franchise agreements [11], and the courts have expressed divided and sundry opinions on the issue. The California statute has not been authoritatively interpreted as it relates to existing franchises, but it is apparent that the California legislature anticipated some of the constitutional objections when the law was drafted. A rigid "good cause" requirement would impose potentially unconstitutional burdens on existing franchise relationships that otherwise permit termination for no cause. However, § 20999.1 defines good cause to include "[f]or ... legitimate business reason." This provision gives courts the needed flexibility, and insures that the existing franchise contracts are not so drastically altered or "impaired" by application of § 20999.1.

It is not disputed that in early 1978, defendant began withdrawing from the branded gasoline distribution market in the Southern California area. All Gulf dealers were notified of the change in policy and were given the option, as was plaintiff herein, to continue in the franchise relationship as an unbranded station. Plaintiff chose not to, on the basis of his own business judgment regarding the options available to him at the time the modified agreement was proposed. Consequently, even if the actions of defendant can be characterized as a termination, the fact that defendant was withdrawing from the branded gasoline market in a given geographical area constitutes a legitimate business reason, and thus was good cause for any "termination." [12]

---

11. See cases cited in n. 10, *supra.*

12. The Court recognizes that the question of good cause has been characterized as one of fact. *See Ernst Enterprises v. Sun Valley Gasoline, Inc.,* 139 Cal.App.3d 355, 358–359, 188 Cal.Rptr. 641 (1983). However, as with other issues that are traditionally questions of fact, when the facts before the Court are undisputed and only one reasonable inference can be drawn, the issue becomes one of law. *See, e.g., Shamrock Development Co. v. City of Concord,* 656 F.2d 1380, 1386 (9th Cir.1981) (estoppel is generally a question of fact *unless* only one reasonable inference can be drawn). The facts surrounding the conclusion of plaintiff's franchise are undisputed, and the question of good cause is properly before the Court on defendant's summary judgment motion.

Section 20999.1(d), which provides that legitimate business reason is an element of "good cause", also requires the defendant to pay plaintiff reasonable compensation for the value of the franchise. Plaintiff contends that defendants failure to pay reasonable compensation violated this provision. However, this requirement is triggered only when the franchisor terminates the franchise *"for the purpose of* enabling the [franchisor] to assume operation of the [franchisee's] business . . ." (emphasis added). Defendant simply did not terminate the franchise for the purpose of assuming the plaintiff's business operations, but instead negotiated a modification of the franchise relationship to implement the policy change that was adopted. The fact that defendant ultimately took control of the premises for a temporary period is not highly probative on the question of what purpose or motivation was behind the change in policy, especially when plaintiff left the business premises vacant and unattended.

### C.  *California Business and Professions Code § 17200*

Plaintiff's third and final cause of action is premised on California Business and Professions Code § 17200 which prohibits "unlawful, unfair and deceptive business practices." Plaintiff alleges three grounds for recovery under this provision: (1) violation of the CFIL; (2) violation of California Business and Professions Code § 20999.1, and (3) fraud in orally representing to plaintiff that the franchise would only be terminated for good cause. The above discussion disposes of the first two grounds. The third ground of alleged fraud can be summarily dismissed.

Plaintiff alleges that an agent of the defendant orally represented to him that it was Gulf's policy to terminate only for good cause. Defendant contends that any oral representation regarding a "good cause" requirement for termination is directly at variance with the express terms of the written contract and thus any evidence regard-

ing such representations would be inadmissible under the parol evidence rule. The contract is an integrated contract, as evidenced by the integration clause found in paragraph 20 of the lease agreement.[13] That clause expressly provides that neither party shall be bound by any "inducement (or) statement" that is not in conformity with the terms of the agreement. Paragraph 2 of the agreement expressly sets forth *all* of the terms for renewal and/or cancellation of the lease.[14] Thus, it is clear that any conflicting oral representations regarding renewal or cancellation terms would contradict the express terms of the integrated agreement. Plaintiff contends that despite the contradiction, the oral statements are admissible because they are being offered to establish fraud, and thus are not governed by the parol evidence rule. Plaintiff's position on this issue misconstrues the law as it exists in California.

It is true, that non-contradictory parol statements are admissible to show fraud even in situations where the contract is integrated. *See Hartman v. Shell Oil Co.,* 68 Cal.App.3d 240, 251, 137 Cal.Rptr. 244 (1977) (parol evidence admissable on fraud theory when alleged representations do not add to or vary the terms of the integrated agreement). However, the alleged fraud plaintiff sues upon is based upon a promise which involves a subject that is expressly provided for in the integrated contract. In *Mobil Oil v. Handley,* 76 Cal.App.3d 956, 143 Cal.Rptr. 321 (1978), plaintiff alleged that Mobil agents represented to him that the lease would only be terminated for good cause. The court found (1) that the lease agreement was an integrated contract, and (2) that the renewal terms of the lease were expressly contained in the agreement. The parol evidence proposed by plaintiff would "flatly contradict" the terms of the contract, and the Court concluded that the extrinsic evidence should not have been admitted. This holding is consistent with the longstanding

---

13.  See, n. 4 *supra.*

14.  The renewal terms were essentially the same as the 1974 Lease. See, n. 3, *supra.*

rule in California that fraud cannot be proven by a promise that is "directly at variance with the promise of a writing." *Bank of America National Trust & Saving Ass'n v. Pendergrass,* 4 Cal.2d 258, 263, 48 P.2d 659 (1935); *Glendale Federal Savings & Loan Ass'n v. Marina View Heights Development Co.,* 66 Cal.App.3d 101, 160–161, 135 Cal.Rptr. 802 (1977) (following the *Pendergrass* decision).

The facts of this case are directly in line with the facts of *Mobil Oil v. Handley.* Here, as there, plaintiff seeks to establish by parol evidence that a promise was made regarding the renewal terms of the contract which would directly contradict the renewal provisions of the written agreement. This is not the typical "non-contradictory promise", but is in fact precisely at odds with the contents of the writing. Thus, it would be impermissible to admit evidence regarding the alleged oral representations at trial in this matter.[15]

### III

In conclusion, the Court finds that there are no material facts in dispute in this litigation, and that the defendant is entitled to summary judgment as a matter of law. Plaintiff's first cause of action based on the CFIL is unsuccessful because the undisputed facts demonstrate that the disclosure requirements set forth in the law had no application to the renewal of plaintiff's franchise in 1975. Plaintiff's second cause of action premised on § 20999.1 of the California Business and Professions Code fails because (1) there was no "termination" to have the effect of triggering the statute, and (2) any "termination" was for good cause, as defendant had a legitimate business reason for altering the terms of the franchise arrangement. Plaintiff's third cause of action is largely moot due to the decision on the first two theories, but additionally fails on the ground that an allegedly fraudulent oral promise which directly

contradicts the terms of an integrated written contract may not be proved by extrinsic evidence.

For all of the foregoing reasons, it is hereby ORDERED that defendant's motion be granted and that judgment be entered in its favor accordingly.

---

**15.** Furthermore, even if the good cause promise was made and proved, the Court has concluded that defendant did not terminate the franchise, and alternatively that any termination was for good cause. Thus, plaintiff's theory of fraud fails whether or not parol evidence is admissible.