**In re VYLENE ENTERPRISES, INC., Debtor.**

**VYLENE ENTERPRISES, INC., Plaintiff,**

v.

**NAUGLES, INC., et al., Defendants.**

**and related cross-action.**

**Bank No. LA 84–14659 SB.
Adv. No. LA 85–4983 SB.**

United States Bankruptcy Court, C.D. California.

Feb. 15, 1989.

Howard Mark Becker of Antin, Magasinn, Stern, Litz & Grebow, Los Angeles, Cal., and Phillip K. Fife of Fife, Smith & Ablon, Universal City, Cal., for debtor.

William Rintala of Rintala, Smoot, Jaenicke & Brunswick and Michael A. Morris of Stutman, Treister & Glatt, Los Angeles, for Naugles, Inc.

Davis von Wittenburg, Los Angeles, Cal., U.S. Trustee.

## MEMORANDUM OF OPINION RE LIABILITY OF NAUGLES, INC.

SAMUEL L. BUFFORD, Bankruptcy Judge.

### I. INTRODUCTION

Naugles', Inc. ("Naugles") has brought this action to prohibit the debtor Vylene Enterprises, Inc. ("Vylene") from infringing Naugles' federally registered trademarks and from otherwise unfairly competing with it. The grounds for the adversary proceeding are that Vylene's ten-year franchise agreement with Naugles has expired according to its terms, and has not been renewed. Vylene opposes the action on the merits, and counterclaims for a renewal of the franchise and for damages.

The Court has previously granted relief from stay to Naugles to permit it to terminate Vylene's franchise and lease, for failure to pay franchise fees and rent ordered by the Court. Vylene's damage claim remains to be determined by the Court.

The issue now before the Court is whether Naugles is entitled to terminate the franchise because no renewal has been negotiated. The Court holds that Naugles had a duty to negotiate in good faith for the renewal of the franchise agreement, and that Naugles has breached this duty by failing to engage in any such negotiations and by opening a competing store that prevented it from bargaining in good faith.

### II. FACTS

Vylene filed the underlying first amended complaint on April 15, 1986 pursuant to authorization of the Court. Vylene asserts nineteen claims for relief, all arising out of the non-renewal of the franchise agreement. Naugles has filed a counterclaim for trademark violations, unfair competition, misappropriation of trade secrets and for possession of the real property under the sublease from Naugles.

Vylene paid $25,000 to Naugles for a ten-year franchise beginning on December 30, 1975 for a Mexican-type fast food restaurant in Long Beach, California. The franchise included a sublease of the property from Naugles. Vylene claims that its restaurant was the most successful Naugles franchise, and one of the most successful Naugles restaurants.

Naugles began business in 1971, and in 1975 it owned 12 restaurants, including the Long Beach restaurant franchised to Vylene. Naugles subsequently expanded to 219 company-owned restaurants by late 1985. The Vylene franchise was the sole

Naugles franchise until October, 1983, when Naugles franchised five more units. As of late 1985 all of the Naugles restaurants were company-operated, apart from these six franchises and one unit under an area franchise. Naugles has subsequently bought out all but one of its other franchises.

Relations between Vylene and Naugles were apparently good until 1984, when Vylene fell behind in payments due under the franchise agreement. In February, in June and again in July, 1984 Naugles gave Vylene notices of termination of the franchise agreement. In response to the last of these notices, Vylene filed this Chapter 11 bankruptcy case on July 17, 1984. At that time Vylene was four months behind in it payments under the franchise agreement. On August 24, 1984 Naugles gave notice that it intended not to renew the franchise upon its expiration on December 30, 1985.

Through various proceedings before this Court, Vylene paid its delinquent franchise fees in the amount of $38,121 and was permitted to assume the franchise agreement through its expiration date of December 31, 1975. The issue of the renewal of the franchise was reserved for later determination.

On October 30, 1985 Vylene gave timely notice of its intent to exercise its renewal or extension rights. On November 14, 1985 Debra Green, the owner and president of Vylene, met with Michael Mooslin, the president of Naugles, to discuss the terms and conditions of a renewal agreement. On November 20, 1985 Naugles responded with an offer, and demanded a renewal fee of $104,522 and other terms that Vylene found unacceptable. (Mr. Mooslin had repeatedly promised Ms. Green theretofore that Naugles would not ask for a renewal fee larger than $40,000). The franchise renewal fee was based on the fee that Naugles was charging in 1983 for new franchises, which was the last time that it had offered any franchises for sale. Although in 1983 Naugles was offering to finance a portion of the franchise fee, it declined to offer any financing arrangements to Vylene, "due to its uncreditworthy history."

Debra Green sent letters to Naugles on December 8, 1985 and December 27, 1985 to protest the unfairness of the Naugles offer and to request a more reasonable renewal offer. After several further letters, on January 9, 1986 Naugles offered to reduce the franchise renewal fee to $80,000, and to reduce slightly the rent demanded. Alternatively, it offered to purchase the franchise for $80,000.

In late 1985, at the time that the Vylene franchise came up for renewal, Naugles was still conducting its business in part through franchises. The Court finds that Naugles' failure to agree to renewal terms with Vylene was not affected by any determination to discontinue franchising. The Court further finds that Naugles made a specific decision to renew the Vylene franchise in late 1985, subject only to the negotiation of acceptable terms.

There have been no further negotiations since early January, 1986, and no renewal agreement has been reached. Vylene continued to operate its franchise as a debtor in possession under Chapter 11 of the Bankruptcy Code after the beginning of 1986. Naugles brought a motion for a preliminary injunction to prohibit Vylene from infringing its trademarks, on the theory that the franchise was terminated, which this Court denied in it opinion dated August 13, 1986. *Vylene Enterprises v. Naugles (In re Vylene Enterprises)*, 63 B.R. 900 (Bankr.C.D.Cal.1986). The Court also denied Naugles' motion for relief from stay to bring an action for possession of the franchise premises for non-payment of rent. The Court conditioned its order on Vylene's payment of $2,000 per month in franchise and rental payments. This decision is now on appeal to the Ninth Circuit.

In the meanwhile, the United States Trustee brought a motion for dismissal of this case or its conversion to a case under Chapter 7, based on Vylene's failure to comply with the Chapter 11 reporting requirements. After several hearings in which the Court admonished the debtor that compliance was required, the Court authorized the appointment of a Chapter 11 trustee on June 26, 1987. The trustee

shortly thereafter recommended the closure of the business and conversion of the case to one under Chapter 7 of the Bankruptcy Code, which was ordered on October 1, 1987. Vylene ceased making its monthly payments, and the Court subsequently granted Naugles' renewed relief from stay motion to take possession of the franchise.

Thus this Court has previously resolved the issues of possession of the franchise premises and the continued operation of the franchise. Vylene's damage claim for failure to renew the franchise remains to be determined.

### III. BAD ACTS BY NAUGLES

The relationship between Vylene and Naugles has been flavored from the outset by bad acts on the part of Naugles. Vylene has claimed damages based on only some of these bad acts.

#### A. *Bad Acts Not Invoked by Vylene*

Shortly after the outset of the Vylene franchise, Naugles' chairman of the board Harold Butler began an affair with Ms. Green, which lasted until the end of 1983. Butler, who was some thirty years older than Ms. Green, remained married throughout this time. Apparently Vylene's relationship with Naugles ran rather smoothly so long as the affair lasted. Vylene's difficulties with Naugles began shortly after the termination of the affair.

A second category of bad acts by Naugles arises from its duty under the Vylene franchise agreement to credit to Vylene's account Vylene's pro rata share of rebates that Naugles received from food suppliers for food sold to Vylene. Naugles refused to credit any rebates to Vylene until August 5, 1985, when Vylene demanded the rebates to which it was entitled. Naugles credited Vylene with only $2,000 at that time. Naugles failed to keep any records from which the rebates owed could be calculated, and offered to provide past rebates only if Vylene would shoulder the cost of auditing Naugles' records to determine the correct amount of the rebates owed. Vylene has chosen not to pursue this issue.

A third set of bad acts arose in 1984, when Mooslin purported to take over the operation of the Vylene franchise without the benefit of any court order. Mooslin simply went to the Vylene store, found that Ms. Green was not on the premises, and took control of the operation of the business. He fired most or all of the employees. While Ms. Green soon learned of this intrusion into Vylene's business and regained control of its operation within a few days, many of the employees failed or refused to return, and it was expensive to replace them. This event was one of the factors that precipitated the filing of this bankruptcy case.

A fifth set of bad acts by Naugles arose in 1982, when Naugles denied Ms. Green's request to permit her to open an additional franchise in Cypress, a town close to Long Beach. When Naugles refused to authorize a new franchise at that location, Ms. Green opened a Mexican fast food restaurant there under her own name. According to Ms. Green's testimony, Naugles also told her that the site was unsuitable for a restaurant of the quality of a Naugles, and that it was too close to another company-owned restaurant. Naugles accused Ms. Green of trademark infringement, and threatened litigation and cancellation of the Vylene franchise if she did not close the store. Ms. Green acceded to the Naugles demand, and in consequence lost her investment in the store, and also lost her home through foreclosure when she could not repay the secured debt incurred to open the new store. Thereafter Naugles acquired the lease that Ms. Green was required to relinquish, and opened a company-owned store at the same site a few months later.

One of the grounds that Naugles cited to object to Vylene's new store in Cypress was that Ms. Green was required by the franchise agreement to devote full time to operating the Long Beach store. The Court finds that this was a pretext, because not long thereafter Naugles offered Ms. Green franchises for five additional restaurants. If she could operate five additional franchises consistent with the "sole occupation" clause, she certainly could operate one additional restaurant consistent with the same clause.

While Vylene does not claim specific damages from the foregoing bad acts by Naugles, they have been proved by Vylene at trial. The Court gives them weight only in evaluating Naugles' good faith in its negotiations with Vylene, in evaluating the credibility of Naugles' evidence, and in inferring Naugles' intent in the matters brought before the Court.

## B. *Naugles' Bad Acts Invoked by Vylene*

In addition to the foregoing bad acts, Vylene contends that two sets of bad acts caused specific harm in this case.

First, in the fall of 1985 Naugles began to issue coupons to customers that authorized the holders to purchase specified food items at specified prices at Naugles stores. The coupon program began after Naugles had reduced the prices and the serving sizes of many of its menu items at certain stores. Although Vylene's store was not a participating store for the coupon program, and it continued to sell the larger portions at higher prices, the coupon program caused a substantial disruption in Vylene's business. According to the evidence presented to the Court, Naugles initiated the coupon program without giving any consideration to its impact on its non-participating franchisees such as Vylene.

Naugles set in motion its final set of bad acts barely more than a month before the renewal of the Vylene franchise was due. On November 23, 1985 Naugles opened a new company-owned store at a distance of approximately 1.4 miles from the Vylene location, which offered a revised menu with prices substantially below those of Vylene. Naugles hired away some of Vylene's managers for this new store. Ms. Green testified that the new Naugles store caused a decline of approximately 35% in the sales at the Vylene store.

While all of these bad acts contributed to the poisoning of the relationship between Vylene and Naugles, Vylene relies only on the last two in support of its case before the Court.

## IV. ANALYSIS

### A. *Extension Provision of Franchise Agreement*

Franchise agreements normally provide specifically for the terms and conditions of renewal. Although the franchise agreement in this case provides for an eight-year extension, it does not specify the terms of the extension: it provides only that the conditions of the extension are to be negotiated by the parties upon the giving of proper notice, which was given in this case.

The renewal provision of the Vylene franchise agreement states as follows:

Provided the FRANCHISEE has not been in default, he shall have the option upon giving sixty (60) days' advance notice in writing thereof to FRANCHISOR, a right of first refusal to extend this franchise at the termination date for an additional eight years on terms and conditions to be negotiated within said sixty (60) days (emphasis in original).

For the interpretation of this provision, the Court must turn to case law and statutory provisions of California, the state whose law governs the interpretation of the franchise agreement.

### B. *Case Law—Franchise Renewal*

The Court has found only four cases on franchise renewal rights, and only one applying California law. In *Davis v. Gulf Oil Corp.*, 572 F.Supp. 1393 (C.D.Cal.1983), the district court in this district denied any right to renewal of a gasoline station franchise because it found that the franchisee had voluntarily abandoned the franchise after rejecting a renewal offer. *Davis* was decided under a California statute, California Business & Professions Code § 20999 (West 1986 supp.) that is limited to gasoline stations. In *McDonald's Corp. v. Markim, Inc.* 209 Neb. 49, 306 N.W.2d 158, 163 (1981), a narrow majority of a divided Nebraska Supreme Court held that the non-renewal of a franchise was not capricious. The Court also opined that renewal language providing for "first consideration for an additional franchise period" placed no significant obligation on the franchisor. In

*In re Roswog,* 48 B.R. 689, 692 (Bankr.M.D. Pa.1985) the court sustained the non-renewal of a franchise because the franchisee had failed to give timely notice of renewal. In *White Motor Corp. v. Nashville White Trucks, Inc. (In re Nashville White Trucks, Inc.),* 5 B.R. 112, 117 (M.D.Tenn. 1980), the court granted relief from stay because the dealership agreement had terminated according to its terms, and had no renewal provision.

The Court finds none of these cases applicable. Unlike the *Davis* case, the debtor has not abandoned the franchise in this case. Furthermore, the gasoline station statute involved in *Davis* in inapplicable here. The right of first refusal in this case is much stronger than the "first consideration" that the bare majority of the court considered insufficient in *McDonald's. Roswog* is not applicable because Vylene gave timely notice of renewal in this case. *White Motor* is inapposite because in that case there was no renewal right.

### C. *Enforceability of Extension Provision*

1. Trial Evidence

■ The evidence at trial provides further support for the Court's prior ruling that the extension provision in the franchise agreement is legally enforceable. *See* 63 B.R. at 909. The Court previously found that California Franchise Investment Law, California Corporations Code § 31111(k) (West 1988 Supp.), required Naugles in 1975 to disclose the conditions under which it may refuse a renewal of the Vylene franchise. If the renewal or the extension provision is unenforceable, the Franchise Investment Law also required Naugles to disclose the unenforceability of this provision in 1975.

Thus if the Court were to find that the renewal or extension provision is unenforceable, it must find that the nondisclosure thereof in 1975 violated California law.

2. Estoppel

■ In addition, the Court finds that Naugles is estopped to deny the binding character of Vylene's right to renew the franchise, because it used a promise of renewal to induce Debra Green's father Wesley Green to advance $38,121 to pay franchise arrearages in 1985.

There is no federal law of estoppel. Accordingly, the Court must look to California law to determine whether Naugles is estopped to deny that Vylene had a binding contractual right to renew its franchise. *Butner v. United States,* 440 U.S. 48, 54, 99 S.Ct. 914, 917, 59 L.Ed.2d 136 (1979).

The California law of estoppel is codified in California Evidence Code § 623, which states:

> Whenever a party has, by his own statement or conduct, intentionally and deliberately led another to believe a particular thing true and to act upon such belief, he is not, in any litigation arising out of such statement or conduct, permitted to contradict it.

The elements of estoppel under California law are: (1) a representation or concealment of material fact, (2) made with knowledge of the facts (3) to a party ignorant of the truth (4) with the intention that the party act upon it, and (5) which induced the party so to act. *Central National Insurance Co. v. California Insurance Guarantee Association,* 165 Cal.App.3d 453, 459, 211 Cal.Rptr. 435 (2d Dist.1985); *Hill v. Kaiser Aetna,* 130 Cal.App.3d 188, 195, 181 Cal.Rptr. 564 (1st Dist.1982); 7 B. Witkin, *Summary of California Law* 5352 (8th ed. 1974); *see, also, California v. Superior Court,* 29 Cal.3d 240, 244 n. 2, 172 Cal.Rptr. 713, 625 P.2d 256 (1981) (first element not stated); *County of Los Angeles v. Alhambra,* 27 Cal.3d 184, 196, 165 Cal.Rptr. 440, 612 P.2d 24 (1980) (same).

Naugles did something to induce Mr. Green to advance $38,121 to it for Vylene's benefit on August 5, 1985. He testified that the inducement was a representation from Walter Barnes, the franchising attorney for Naugles and a member of its Board of Directors, that this payment would permit the renewal of the franchise. Barnes testified that he did not make any such representation. Naugles has shown on cross-examination that Mr. Green's memo-

ry is often hazy. However, Naugles offers no other plausible explanation for Mr. Green's motivation in advancing this sum. In consequence, the Court finds that Mr. Green's testimony on this issue is credible and that the inconsistent testimony by Barnes is not credible.

The Court concludes that Naugles represented to Vylene that the payment of the arrearages would guarantee its right to renew the franchise at the end of 1985, and that Vylene relied on this representation in borrowing the $38,121 from Mr. Green in August, 1985 to bring the payments current. Thus Naugles is estopped from contending that the renewal provision is not enforceable.

The Court's determination that this provision is enforceable is also supported by the fact that Naugles' master lease on the Vylene premises extends to the end of 1993, the expiration of the eight-year renewal term.

### D. *Franchise Renewal or Extension Negotiations*

■ The Court has previously found that Naugles had a duty of good faith and fair dealing, that governed its conduct in respect to the extension provision of the Vylene franchise agreement. *See* 63 B.R. at 908–09. The timely notice of renewal by Vylene triggered the duty of Naugles to negotiate in good faith, observing the standards of fair dealing, in an honest effort to arrive at mutually agreeable terms for the eight-year extension of the Vylene franchise.

The Court finds that the offer that Naugles made to Vylene in late 1985 was not an offer to extend or renew the Vylene franchise. Naugles' expert on franchising, Brett Lowell, testified that the renewal of a franchise does not involve a new and different franchise document. However, Naugles offered a new, quite different franchise from the prior agreement between the parties. The new contract would have increased Vylene's franchise fees by $50,000 to $60,000 per year[1]. Naugles had every right to offer a new franchise, which, if accepted, would have replaced Vylene's renewal or extension right. However, the offer of a new franchise did not discharge Naugles' obligation to bargain in good faith on the terms and conditions of a renewal or extension of the existing franchise.

Naugles argues that the franchise has expired because no renewal terms were agreed to in the 60–day period prior to December 30, 1985, as required by the franchise agreement. Naugles cannot prevail on this argument. The 60–day negotia-

---

**1.** The reasonableness of Naugles' offer to Vylene for a new franchise is also suspect.

Brett Lowell, Naugles' expert on franchising, testified on cross-examination that a renewal fee of 100% of an initial franchise fee, as offered by Naugles, is not unusual, but that he has only seen it in approximately 20% of the franchise agreements that he has reviewed. In any event, he testified, such renewal fees are uniformly disclosed in the initial franchise agreement, with the sole exception of the Vylene agreement.

Lowell testified that a royalty fee of eight percent, as offered by Naugles, is at the high end of the range of reasonableness. He testified that 90% of franchise royalty fees are lower. He admitted on cross-examination that an eight percent royalty fee is reasonable only if the renewal fee is low.

Naugles, however, proposed a royalty fee at the top of the range of reasonableness, and a renewal fee at the top of the range of reasonableness. In Lowell's opinion this combination would be unreasonable. The Naugles proposal certainly appears unreasonable to the Court in this respect.

The Court notes that Naugles knew or should have known that Vylene would not accept the terms and conditions of its 1983 franchise agreement. Vylene was offered several franchises in 1983 under the 1983 agreement. Debra Green reviewed the proposed agreement and rejected it because she found the terms to be commercially unreasonable.

Naugles, in fact, had itself learned that the 1983 franchise agreement was not commercially reasonable. Of the original 16 franchises that it sold in 1983, it had repurchased or terminated all but one by the fall of 1985. As to the last remaining franchise (which was the only Naugles franchise apart from Vylene), in late 1985 it was in the process of renegotiating the terms to reduce the royalties and rent to maintain the viability of the franchise. Thus by late 1985 Naugles knew that the 1983 franchise agreement was commercially unreasonable.

Nevertheless, it was this franchise proposal that was offered to Vylene in late November, 1985. In addition, the rent and royalty concessions made to Naugles' sole other franchise were not offered to Vylene.

tion period presupposes that the parties would bargain in good faith in a serious attempt to reach agreement during this time. Good faith bargaining is a condition precedent to the expiration of the franchise after notice has been given to exercise the renewal or extension right.

The Court finds that Naugles conducted no negotiations concerning the extension or renewal of the Vylene franchise for an additional eight-year term. While Naugles has presented testimony that it was prepared to enter into a viable agreement for renewal of the franchise, the Court finds the evidence insufficient that it communicated this to Vylene. The parties agree that they never came close to an agreement concerning a renewal or extension of the franchise. Thus Naugles breached its contract with Vylene, and Vylene is entitled to the damages resulting from the breach.

### E. *Competing Store*

The Court finds the opening of the new Naugles store 1.4 miles from the Vylene store to be particularly egregious conduct. Naugles defends the new store on the grounds that it draws business from a different clientele, and that it does not actually compete with Vylene's store. Naugles defends its price cutting on the grounds that it has cut its prices everywhere in response to competition, and that it offered the new menu and pricing to Vylene as well.

The Court has heard testimony from both Lowell and Mooslin on the size of population required to support a fast-food restaurant such as a Naugles store, and the geographic area required to support such a store where the population density is similar to that of Long Beach. Lowell testified that the territorial exclusivity of one mile radius was reasonable. However, he gave no evidence that he had examined the facts of the Vylene franchise, to determine what was reasonable for it. The Court disbelieves his testimony.

Mooslin testified that the reasonable territory to support a Naugles franchise in a neighborhood such as Long Beach is a radius of three miles. Based on this evidence, the Court finds that a radius of three miles is required to support the Vylene store, and to protect it from unfair competition from other Naugles stores. Thus the new Naugles store draws customers away from the Vylene store.

The opening of the new Naugles store within a mile and a half was thus unfair competition by Naugles. In addition, this conduct by Naugles may be a violation of section 2 of the Sherman Act, 15 U.S.C. § 2 (Supp.1988). *See Photovest Corp. v. Fotomat Corp.,* 606 F.2d 704, 714–719 (7th Cir. 1979), *cert. denied,* 445 U.S. 917, 100 S.Ct. 1278, 63 L.Ed.2d 601 (1980).

The Court finds that the opening of this store was a breach of Naugles' obligation of good faith and fair dealing that it owed to Vylene. The Court further finds that the opening of this store prevented it from bargaining in good faith with Vylene for a renewal of the Vylene franchise.

### V. CONCLUSION

Based on the foregoing, the Court finds that Naugles owed Vylene a duty to negotiate in good faith for a renewal of the franchise for an additional term of eight years. The Court further finds that Naugles breached this duty, to the damage of Vylene.

As noted *supra,* the Court has previously published its preliminary findings of fact and conclusions of law in this adversary proceeding. After trial on the merits, the Court makes the findings and conclusions contained herein. These findings and conclusions are supplemented by those found in the Court's earlier opinion, to the extent that the prior findings are consistent herewith.

The Court is informed that the parties wish to offer further evidence and argument on the amount of damages that Naugles owes to Vylene. The Court sets a further status conference on this subject on March 7, 1989 at 10:00 a.m. At the same time the Court will consider further the motion by Naugles to approve its settlement with West American Insurance.